## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## GREENBELT DIVISION

PAYAM TABIBIAN,
an individual,
                    Plaintiff,

    v.

                                              CASE NO. _____

MOHAMMAD ESFAHANI,
an individual,

EBRAHIM ESFAHANI,                             JURY TRIAL DEMANDED
an individual,

PROVEN SYSTEMS, LLC,
a Washington, DC limited liability
company,

2001-13 ME LLC,
a Washington, DC limited liability
company,

MPE LLC,
a Maryland limited liability company,

3301 14th Street Columbia Heights, LLC,
a Washington, DC limited liability
company,

1101 Southwest LLC,
a Washington, DC limited liability
company,

        and

3325 Wilson ME, LLC
a Virginia limited liability company,

                    Defendants.

## VERIFIED COMPLAINT

Plaintiff Payam "Peter" Tabibian hereby alleges the following against Mohammad Esfahani ("Esfahani"), Ebrahim Esfahani ("E. Esfahani"), Proven Systems, LLC ("Proven Systems"), 2001-13 ME LLC ("2001-13 ME"), MPE LLC ("MPE"), 1101 Southwest LLC ("1101 Southwest"), 3325 Wilson ME ("3325 Wilson"), and 3301 14th Street Columbia Heights, LLC ("3301 14th Street"), collectively "Defendants." Proven Systems, MPE, 2001-13 ME, 1101 Southwest, 3325 Wilson, and 3301 14th Street are referred to collectively as "the LLC Defendants."

## NATURE OF THE ACTION

1.     This is an action arising under intellectual property, tort, and contract law. Specifically, Plaintiff alleges trademark infringement under the trademark laws of the United States, 15 U.S.C. §§ 1114 and 1125(a), copyright infringement under the laws of the United States, 17 U.S.C. § 501, and state law claims for common law trademark infringement and unfair competition, breach of contract, unjust enrichment, quantum meruit, fraudulent misrepresentation, detrimental reliance, breach of fiduciary duty, and civil conspiracy.

## PARTIES

2.     Payam "Peter" Tabibian ("Tabibian") is an individual residing in Great Falls, Virginia.  Tabibian is an owner and operator of a chain of fast food restaurants known as Z-Burger.

3.     Mohammad Esfahani ("Esfahani") is an individual residing in Arlington, Virginia. Upon information and belief, Mohammad Esfahani is a member of each of the LLC Defendants.

4.      Ebrahim Esfahani ("E. Esfahani") is an individual residing in Alexandria, Virginia. Upon information and belief, E. Esfahani is a member of one or more of the LLC Defendants.

5.      Proven Systems, LLC is a Washington, D.C. limited liability company that purports to own and operate a Z-Burger restaurant located at 4321 Wisconsin Avenue, N.W., Washington, D.C. 20016.

6.      MPE, LLC is a Maryland limited liability company that purports to own and operate a Z-Burger restaurant located at 8145C Honeygo Boulevard, Nottingham, Maryland 21236.

7.      3301 14th Street Columbia Heights, LLC is a Washington, D.C. limited liability company that purports to own and operate a Z-Burger restaurant located at 3301 14th Street, N.W., Washington, D.C. 20010.

8.      1101 Southwest, LLC is a Washington, D.C. limited liability company that purports to own and operate a Z-Burger restaurant located at 1101 4th Street, S.W., Unit 170, Washington, D.C. 20024.

9.      3325 Wilson ME, LLC is a Virginia limited liability company that purports to own and operate a Z-Burger restaurant located at 3325 Wilson Boulevard, Arlington, Virginia 22201.

10.     2001-13 ME LLC is a Washington, D.C. limited liability company that purports to own and operate a Z-Burger restaurant located at 2414 Wisconsin Avenue, N.W., Washington, D.C. 20007.

## JURISDICTION

11.     This Court has original subject matter jurisdiction over the federal

trademark and copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15

U.S.C. § 1121. This Court has related claim jurisdiction over the state law tort and

contract claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

12.     Defendants Esfahani and E. Esfahani purport to own and operate Z-Burger

restaurants within this district, including the restaurant at 8145C Honeygo Boulevard,

Nottingham, Maryland 21236 ("the White Marsh location"). They—and the LLC

Defendants by and through them—have established sufficient minimum contacts with

this district by purposefully availing themselves of the laws and benefits of this district,

and the exercise of personal jurisdiction over them would not offend traditional notions

of fair play and substantial justice.

13.     Venue is proper in this district under 28 U.S.C. § 1391(a) because all

Defendants are subject to personal jurisdiction in this district at the time the action was

commenced, and under 28 U.S.C. § 1391(b) and (c) because a substantial part of the

events or omissions giving rise to the claims occurred in this district and the Defendants

maintain their principal place of business in this district.

## FACTUAL BACKGROUND

14.     Payam "Peter" Tabibian is a successful restaurateur, with decades of

experience in the industry. After escaping from Iran with his family in 1982 at the age of

ten, he entered the food service industry as a teenager four years later, starting as an

employee with Burger King. Within three years, he was promoted to assistant manager,

the youngest ever at the chain's busy L'Enfant Plaza location.  Additional jobs followed,

including an eight-year stint as a general manager of Jerry's Subs and Pizza in Capitol Heights, where, over the course of that time, he increased the restaurant's sales from $4,000 per week to $23,000 per week.

15.      In 2005, Tabibian developed his idea for a restaurant based on the concept of hand-crafted burgers, a unique sauce, freshly cut french fries, and over fifty varieties of hand-spun milkshakes. That proprietary concept eventually became Z-Burger.

16.      In addition to developing the Z-Burger concept, Tabibian spent considerable time and effort refining it. As the sole creative force behind the Z-Burger brand, he personally designed the Z-Burger trade dress, including the layout and interior design of the restaurants, the layout and content of the menus, the employee uniforms, and the soda cup and to-go bag artwork.  Tabibian also created the recipes for the food, including the hamburgers, fries, and milkshakes. Tabibian's attention to detail extended even to the smallest of items. For example, he developed all of the food recipes, including "Z-Sauce," Z-Burger's proprietary meat blend, french fry seasoning, onion ring batter, milkshake recipes, and a secret bread recipe known only to Tabibian and the hand-picked bakery he uses to make the bread for use in Z-Burger's hamburger and hot dog buns.

17.      As part of his brand development efforts, Tabibian designed and registered the trademarks **"GRILLED TO PERFECTION"** (U.S. Reg. No. 3,327,137) for fast food restaurant services, filed on January 20, 2006, and **"Z-BURGER"** (U.S. Reg. No. 3,270,187) also for fast food restaurant services, filed on January 20, 2006. Copies of the registrations are attached as Exhibits A and B, respectively.  Both registrations are valid, in full force, and incontestable, including as to Tabibian's claim of ownership.

18.     Tabibian subsequently designed and registered the following three

additional trademarks:



U.S. Reg. No. 3,918,088, filed March 8, 2010, for fast food restaurant services;



U.S. Reg. No. 3,989,013, filed October 24, 2010, for restaurant services; and



U.S. Reg. No. 4263457, filed November 14, 2011, for restaurant services.  Copies of

these registrations are attached as Exhibits C, D and E, respectively.  All three of these

registrations are valid and in full force.  Collectively, the five trademarks identified in

Exhibits A-E are referred to as the "Asserted Marks."

6

19.     Tabibian used his own personal funds for the preparation and registration of all five Asserted Marks. Neither Esfahani nor any of the other Defendants had any involvement or investment in the creation of any of the Asserted Marks, nor did they provide any funds for the preparation or registration of the Asserted Marks. The Asserted Marks are owned by Tabibian alone.

20.     The Z-Burger menus and logo that Tabibian created and designed are new and original works of art, subject to U.S. Copyright Application Nos. VA 1-1809124071, VA 1-1809276333, and VA 1-1809383706, which are attached as Exhibits F, G, and H, respectively.

21.     After developing the Z-Burger concept and filing the first two Asserted Marks, Tabibian presented his idea to Esfahani in the hope of securing financing. The two agreed to form a partnership with the express purpose of opening a new restaurant for Tabibian's Z-Burger concept. The two agreed that Tabibian would provide the knowledge, expertise, and operational control, that Esfahani would provide the necessary funds, and that any profits would be split evenly between the two of them.

22.     Tabibian and Esfahani formed a general partnership in the Fall of 2006 under the terms specified above ("the Z-Burger Partnership"). In addition, while Tabibian retained all ownership of the Asserted Marks, he granted the Z-Burger Partnership a license to use the Asserted Marks, subject to his personal control over their use, including ensuring that any food, goods, or services provided under the marks were held to the highest standards of quality.

23.     By 2007, Tabibian was ready to launch Z-Burger. In March 2007, he and Esfahani jointly signed a lease for property at 4321 Wisconsin Avenue, N.W.,

Washington, DC 20016 ("the Tenleytown location"). As equal partners in the Z-Burger

Partnership, both Tabibian and Esfahani signed individual personal guarantees.

24.     Shortly after signing the lease for the Tenleytown location, Esfahani

asked Tabibian for permission to bring his brother, E. Esfahani, into the Z-Burger

Partnership as a one-third partner. Because he was focused on the success of the business

and wanted to maintain a good working relationship with Esfahani, Tabibian agreed, even

though E. Esfahani had no involvement with Z-Burger to that point. Accordingly, as of

April 2007, Tabibian, Esfahani, and E. Esfahani were each one-third partners in the Z-

Burger Partnership, with profits to be split equally among them. At about that time,

Tabibian signed the operating agreement for Proven Systems, which confirmed his status

as a one-third owner.

25.     As a result of Tabibian's tireless efforts, the Tenleytown location opened

in March 2008 as the first Z-Burger restaurant, using the Asserted Marks, trade dress,

interior design and layout, recipes, and menus created by Tabibian. At all times relevant

to the instant dispute, Tabibian has controlled the use of the Asserted Marks at the

Tenleytown location and has exercised control over the quality of goods and services

provided, including the food, design, signage, advertising, and marketing.

26.     Consistent with his role in the Z-Burger Partnership, Tabibian also

supervised the day-to-day operation of all aspects of the Tenleytown location; he

interviewed and hired the managers and employees, he was responsible for negotiating all

supply agreements, set up systems to allow for vendor audits, set up the credit card

processing contract, and ordered supplies. He was present at the Tenleytown location

seven days a week,  often working the register or assisting the cooks while aggressively

marketing the new business by giving interviews and creating promotions that quickly established him as the public face of Z-Burger.  Tabibian's hard work and creativity in promoting the Z-Burger brand generated substantial and valuable goodwill  in the Z-Burger business.

27.    In contrast, Esfahani, consistent with his role in the Z-Burger Partnership, was barely present at the Tenleytown location and played no role in its day-to-day operation. Instead, Esfahani maintained control over the partnership's finances, including having sole responsibility for paying all expenses and preparing the partnership's tax returns. Esfahani was also responsible for picking up the revenue at the individual stores and depositing it into the appropriate bank accounts.

28.    Although most restaurant startups fail, the Tenleytown location quickly became successful due to Tabibian's hard work and unwavering commitment to providing top quality customer service, quality food at a fair price, and his unrelenting efforts to market and promote the Z-Burger business. That success led to the opening of five additional Z-Burger restaurants between 2008 and 2013:

- 2414 Wisconsin Avenue, N.W, Washington, D.C. 20007 ("the Glover Park location");

- 8145C Honeygo Boulevard, Nottingham, Maryland 21236 ("the White Marsh location");

- 1101 Fourth Street, S.W., Unit 170, Washington, D.C. 20024 ("the Southwest location");

- 3301 14th Street, N.W., Washington, D.C. 20010 ("the Columbia Heights location"); and

- 3325 Wilson Boulevard, Arlington, Virginia 22201 ("the Clarendon location").

29.     Each of the five new Z-Burger locations used the Asserted Marks, trade dress, interior design and layouts, menus, and recipes created by Tabibian. At all times prior to the instant dispute, Tabibian has controlled the use of the Asserted Marks at each location and has exercised control over the quality of goods and services provided, including the food, design, signage, advertising, and marketing. Over the course of opening the various restaurants, Tabibian continued to develop and refine the brand, including his expansion of the dessert menu to include "concretes"—a dense frozen custard treat with mix-ins that earned rave reviews.

30.     Consistent with his role in the Z-Burger Partnership, Tabibian supervised and was the sole Z-Burger partner responsible for opening each location and the day-to-day operations, including hiring and training employees, ordering supplies, designing new store promotions, and ensuring that each Z-Burger location maintained high food quality and food service standards. Tabibian devoted significant time developing and promoting each  Z-Burger restaurant, often spending over eighty hours per week rotating between each of the Z-Burger locations to ensure that each location provided high quality food and customer service on a consistent basis.

31.     In contrast, Esfahani, spent little time at any of the locations and took no responsibility for the day-to-day operation of any location.

32.     In addition to supervising the day-to-day operation of the six locations, Tabibian was the sole Z-Burger partner responsible for the promotion and marketing of the business. As Z-Burger's goodwill ambassador, he created promotions such as food-eating contests, free milkshake happy hours, and food giveaways, including one promotion during which the Z-Burger locations gave out almost 16,000 free burgers to

federal government employees furloughed by the government shutdown in 2013.

33.     At all times since the opening of the Tenleytown location, Tabibian served as the public face of the Z-Burger Partnership and was featured by several media outlets, including profiles and/or stories by the Washington Post, the Wall Street Journal, ABC News, the Baltimore Sun, and the Washington Business Journal, as well as a televised appearance on the WBFF Fox 45 television station in Baltimore. In each case, Tabibian was recognized as a Z-Burger co-founder, owner, and/or CEO. Despite being aware of those profiles, neither Esfahani nor E. Esfahani ever challenged, corrected, or modified the description of Tabibian's role, either privately to Tabibian or publicly, prior to the instant dispute.

34.     As a direct result of Tabibian's efforts, the Z-Burger Partnership quickly became a successful business, with the Tenleytown location alone earning a profit of almost $700,000 in its first year on revenues of $2.8 million.

35.     Despite the success of the Z-Burger Partnership and the countless hours Tabibian spent turning Z-Burger into  a successful business, he has received less than $40,000 per year, an amount barely enough to cover his living expenses.  He agreed to that amount because he believed that any profits were being reinvested into the business to ensure its continued success. During that time, however, Tabibian received numerous assurances from Esfahani and the Z-Burger corporate attorney, David Mahdavi ("Mahdavi"), that he was an equal one-third owner of Z-Burger Partnership and would eventually receive his full one-third share of the profits.

36.     However, despite these assurances, Tabibian has not received any portion of the profits. Esfahani's and E. Esfahani's failure to share the partnership's profits led

11

the present dispute to arise in the Spring and Summer of 2014.

37.     Tabibian subsequently learned that Esfahani had, unbeknownst to Tabibian, named himself and E. Esfahani as the sole members of the LLC Defendants, and that all revenue from the six locations flowed into the LLC Defendants, which are currently controlled solely by Esfahani and/or E. Esfahani.

38.     On May 8, 2014, Tabibian requested a meeting with Esfahani to discuss Z-Burger's finances and review the documents for the LLC Defendants. In attendance at this meeting were Esfahani, Mahdavi, Tabibian, and Tabibian's advisor, Mr. Shaun Akahvan.  During this meeting, Esfahani revealed that he was being audited by the Internal Revenue Service and had not shared the corporate organizational documents for the LLC Defendants with Tabibian because he did not want  Tabibian implicated in Esfahani's IRS audit. Esfahani confirmed to all in attendance at this meeting, however, that Tabibian nonetheless was a one-third owner of the entire Z-Burger business.

39.     In August 2014, as a result of the present dispute, Tabibian stopped receiving any compensation from Esfahani or the Z-Burger Partnership and has received no compensation from them since that time. Around the same time, Esfahani removed Tabibian from all Z-Burger operating bank accounts and fraudulently informed Z-Burger employees, suppliers, accountants, and agents that Tabibian was no longer involved with Z-Burger. Since August 2014, Esfahani has effectively blocked Tabibian from participating in any aspect of the business.

40.     Upon information and belief, Esfahani has fraudulently prepared and/or submitted documents for the LLC Defendants, including tax returns, employee withholding reports, and DC sales tax reports that include Tabibian as an officer.

Signatures for Tabibian which appear on these documents are forged. Upon information and belief, Esfahani is responsible for these forgeries.

41.     Upon information and belief, Esfahani has also withdrawn Z-Burger funds for his personal use, including funds in the form of cash with no accounting to Tabibian. For example, Esfahani opened bank accounts that automatically sweep Z-Burger funds to his personal accounts and to non-Z-Burger business accounts controlled by Esfahani.

42.     Upon information and belief, Esfahani has used his role as a Z-Burger Partner to negotiate lease and loan terms with other Esfahani-owned entities and/or the LLC Defendants that unfairly benefit Esfahani to the detriment of the Z-Burger Partnership. For example, he used Z-Burger funds to purchase the Arlington Z-Burger location, used Z-Burger funds to build out the store, then placed the ownership of the property into an entity controlled solely by him, thereby denying Tabibian the benefit of his hard work, labor, and ideas. On information and belief, Esfahani coerced third party building contractors to submit falsified invoices to the Z-Burger Partnership for work performed building out the Arlington Z-Burger location.  Esfahani then presented these false invoices to banks to procure funds.

43.     As a result of the actions outlined above, on August 25, 2014, Tabibian expressly withdrew his trademark license to the Z-Burger Partnership and provided immediate notice of the withdrawal to Esfahani through counsel. The six Z-Burger locations continue to improperly use the Asserted Trademarks, copyrighted designs, and Z-Burger trade dress. Esfahani continues to fraudulently inform Z-Burger employees, suppliers, accountants and other agents that Tabibian is no longer involved in the Z-Burger business.

## COUNT I – TRADEMARK INFRINGEMENT
## AND COUNTERFEITING (15 U.S.C. § 1114(1)(a))
### (Against All Defendants)

44.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 43.

45.     Tabibian is the sole owner of the Asserted Trademarks. At all times prior to the instant dispute, Tabibian has controlled the use of the Asserted Marks at each location and has exercised control over the quality of goods and services provided, including the food, design, signage, advertising, and marketing.

46.     The Asserted Trademarks and the goodwill of the business, products, and services associated with them in the United States are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with Z-Burger as being products and services of the highest quality and reputation.

47.     As a member of the Z-Burger Partnership, Tabibian granted the Z-Burger Partnership a license to use the Asserted Trademarks subject to his ongoing control over the use of the Asserted Trademarks and the quality of goods and services provided thereunder.

48.     On August 25, 2014, however, Tabibian expressly revoked the license and provided notice, in writing, of the revocation to Esfahani and to the Z-Burger Partnership, E. Esfahani, and the LLC Defendants through Esfahani.

49.     Without Tabibian's authorization or consent, and having knowledge of the Asserted Trademarks and Tabibian's ownership of and prior rights to the Asserted Trademarks, as evidenced by the fact that Defendants' products bear counterfeit marks

that are identical to one or more of the Asserted Trademarks, Defendants Esfahani, E.

Esfahani, and the LLC Defendants have distributed, offered for sale, and/or sold

counterfeit goods and services to the consuming public with the intent to misrepresent the

source of those goods and services and, by doing so, have affected interstate commerce.

50.     Defendants have distributed, sold, and offered for sale counterfeit products

as genuine products covered by the Asserted Trademarks, when they are not genuine

products covered by the Asserted Trademarks.

51.     Defendants' unauthorized use of the Asserted Trademarks is likely to

cause and is continuing to cause, confusion, mistake and deception among the general

purchasing public as to the origin of the goods and services distributed, offered for sale,

and/or sold under the Asserted Trademarks and is likely to deceive the public into

believing that the goods and services distributed, offered for sale, and/or sold by

Defendants originate from, or are otherwise associated with, Tabibian, to the damage and

detriment of Tabibian's reputation, goodwill, and sales.

52.     Tabibian is without an adequate remedy at law and has suffered

irreparable harm and injury to his goodwill and reputation.

53.     As a result of Defendants' activities, Tabibian has been damaged in an

amount to be ascertained. Tabibian seeks an accounting of Defendants' profits and his

actual and consequential damages resulting from Defendants' infringing acts. Tabibian

also seeks injunctive relief pursuant to 15 U.S.C. § 1116. Tabibian seeks punitive,

additional, and enhanced damages from Defendants, as well as recovery of Tabibian's

attorneys' fees and costs of litigation. In addition, or in the alternative, Tabibian seeks

recovery of the maximum amount of statutory damages as permitted by 15 U.S.C. §

1117(c), including, but not limited to, $2,000,000.00 per counterfeit mark per each type of good sold, offered for sale, or distributed.

54.     Because of the notice provided to Esfahani, the infringing use is willful, entitling Tabibian to enhanced damages.

## COUNT II – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)) (Against All Defendants)

55.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 54.

56.     The unauthorized goods and services sold, offered for sale, and distributed by Defendants are of the same general nature and type as the goods and services sold, offered for sale, and distributed by Tabibian and, as such, Defendants' use of the Asserted Trademarks and counterfeit marks have caused confusion to the general purchasing public.

57.     By misappropriating and using the Asserted Trademarks, Defendants misrepresented and falsely described to the general purchasing public the origin and source of the infringing goods and services and created a likelihood of confusion by purchasers as to both the source and sponsorship of such products.

58.     Defendants' unlawful, unauthorized, and unlicensed importation, manufacture, distribution, sale, and offer for sale of the infringing goods and services created express and implied misrepresentations that the infringing goods and services were created, authorized, or approved by Tabibian, all to Defendants' profit and to Tabibian's great damage and injury.

59.     Defendants' acts are in violation of Section 43(a) of the Lanham Act, 15

U.S.C. § 1125(a), in that Defendants' use in interstate commerce of the Asserted

Trademarks and counterfeit marks, in connection with Defendants' goods and services,

constitutes a false designation of origin and unfair competition.

60.     Tabibian is without an adequate remedy at law and has suffered

irreparable harm and injury to his goodwill and reputation.

61.     As a result of Defendants' activities, Tabibian has been damaged in an

amount to be ascertained. Tabibian seeks an accounting of Defendants' profits and his

actual and consequential damages resulting from Defendants' infringing acts. Tabibian

seeks punitive, additional, and enhanced damages from Defendants, as well as recovery

of Tabibian's attorneys' fees and costs of litigation. In addition, or in the alternative,

Tabibian seeks recovery of the maximum amount of statutory damages as permitted by

15 U.S.C. § 1117(c).

### COUNT III – COMMON LAW TRADEMARK
### INFRINGEMENT & UNFAIR COMPETITION
#### (Against All Defendants)

62.     Plaintiff realleges and incorporates herein the allegations contained in

paragraphs 1 through 61.

63.     Tabibian owns valid trademarks, as set forth above, which are distinctive

and have acquired a secondary meaning.

64.     Defendants' actions, as described above, are likely to cause and have

caused substantial confusion, mistake, or to deceive as to the affiliation, association or

connection of Defendants with Tabibian, or as to the origin of the goods and services

distributed, offered for sale, and/or sold by Defendants and the sponsorship or approval

by Tabibian of Defendants and their commercial activities such that Defendants' acts

constitute infringement of Tabibian's proprietary rights in the Asserted Trademarks, misappropriation of Tabibian's goodwill in the Asserted Trademarks, and unfair competition under DC law.

65.     As a result of Defendants' infringement, Tabibian has suffered and continues to suffer injury and damage in an amount to be ascertained. The acts of infringement by Defendants have resulted in substantial unjust profits and unjust enrichment of Defendants in an amount to be ascertained. Such acts have caused great damage and harm to Tabibian.

66.     The continuing acts of Defendants are jeopardizing the goodwill of Tabibian and Tabibian's valuable Asserted Trademarks, and such acts have caused and will continue to cause irreparable injury to Tabibian and to the consuming public. The acts of Defendants complained of herein have caused irreparable injury to Tabibian and the consuming public for which there is no adequate remedy at law. Additionally, or in the alternative, Tabibian seeks an accounting of Defendants' profits and his actual and consequential damages resulting from Defendants' infringing acts which have resulted in confusion among the general purchasing public. Moreover, Tabibian seeks punitive, additional, and enhanced damages from Defendants for their willful conduct.

### COUNT IV – COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)
**(Against All Defendants)**

67.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 66.

68.     The Z-Burger logo and menus attached as Exhibits F, G and H are original works that may be copyrighted under United States law ("the Copyrighted Works"). Tabibian created them and first published them in January 2006. They are copyrighted

and each Copyrighted Work is the subject of a pending application for copyright registration.

69.     Between 2006 and 2014, Tabibian created and designed the Copyrighted Works. Tabibian is the owner of each of the Copyrighted Works. Defendants have acquired no rights in the Copyrighted Works due to, *inter alia*, Esfahani's and E. Esfahani's material breach of the Z-Burger Partnership agreement.

70.     Since at least August 25, 2014, Defendants have infringed the Copyrighted Works by using, publishing, displaying publicly, and promoting them in the Z-Burger restaurants, among other places.

71.     Without the authorization of Tabibian, Defendants are, and are contributing to and aiding others in, reproducing the Copyrighted Works, distributing copies of the Copyrighted Works to others by sale or transfer of ownership, and displaying the Copyrighted Works publicly. Defendants continue to infringe the Copyrighted Works by continuing to publish, use, and promote goods and services using the Copyrighted Works without authorization, thus causing irreparable injury. Upon information and belief, Defendants have derived substantial financial benefit from the infringement of Tabibian's copyrights.

72.     The foregoing acts of copyright infringement by Defendants have been willful, intentional and purposeful, in disregard of and with indifference to Tabibian's rights. As a direct and proximate result of Defendants' infringement of Tabibian's copyrights, Tabibian is entitled to damages as well as a disgorgement of Defendants' ill-gotten profits pursuant to 17 U.S.C. § 504(b). Alternatively, Tabibian is entitled to the maximum statutory damages of $150,000.00 for all individual infringement involved in

the action with respect to any one work for which any one infringer is individually liable, or for which any two or more infringers are jointly and severally liable, or for such other amount as may be proper under 17 U.S.C. § 504(b). Tabibian has no adequate remedy at law. Pursuant to 17 U.S.C. § 504(b), Tabibian is entitled to preliminary and permanent injunctions prohibiting further infringement of his copyrights and exclusive rights under the statute.

73.     In connection with his copyright claim, Tabibian seeks compensatory damages, and disgorgement of profits and advantages wrongfully gained by Defendants from infringing Tabibian's copyrights in an amount to be determined at trial, as well as interest, costs, and reasonable attorneys' fees as provided by law.

74.     Tabibian is entitled to a full and accurate accounting by Defendants of all profits generated through their infringement of the Copyrighted Works.

75.     Defendants' infringement of Tabibian's copyrights has damaged Tabibian and has been and continues to be willful and deliberate with full knowledge of Tabibian's rights.

76.     Defendants will continue their acts of infringement unless enjoined by the Court.

77.     As a result of the infringement, Tabibian has suffered and continues to suffer damages in an amount to be proved at trial.

78.     As a result of the infringement, Tabibian has suffered irreparable harm and Defendants should be preliminarily and permanently enjoined from directly or indirectly infringing Tabibian's rights.

## COUNT V – BREACH OF CONTRACT
### (Against Defendants Esfahani and E. Esfahani)

79.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 78.

80.     In December 2006, Tabibian and Esfahani contracted to form the Z-Burger Partnership. As part of the contract, Esfahani offered to provide the necessary funds in exchange for Tabibian providing his knowledge, expertise, and operational control, with profits to be divided equally between them. The subsequent behavior of both Tabibian and Esfahani in establishing and operating the Z-Burger Partnership confirms each partner's acceptance of the terms.

81.     Tabibian and Esfahani subsequently modified the terms of the contract by admitting E. Esfahani as a partner, with profits to be split equally among the three of them.

82.     Tabibian has upheld his obligations under the contract by building the Z-Burger Partnership into a successful business that  now includes six locations in the DC metropolitan area.

83.     Esfahani and E. Esfahani, however, have materially breached their obligations under the contract by withholding Tabibian's share of the Z-Burger Partnership's profits. Esfahani has further expressed his intent not to disburse Tabibian's share of the Z-Burger Partnership's profits, but to continue withholding them.

84.     Esfahani and E. Esfahani have materially breached their obligations to Tabibian under the contract by forming the LLC Defendants to receive profits from the Z-Burger business and excluding Tabibian from membership in these companies.

85.     Esfahani and E. Esfahani have materially breached their obligations to Tabibian by converting Tabibian's interest in the Z-Burger Partnership to their own use and benefit, without Tabibian's approval, knowledge or consent, and to his detriment.

86.     By reason of their failure to disburse Tabibian's share of the Z-Burger Partnership's profits, Esfahani and E. Esfahani are liable to Tabibian for breach of contract and monetary damages, plus interest, for the withheld funds.

87.     Alternatively, Esfahani and E. Esfahani are liable to Tabibian for specific performance of the contract terms, including a disbursement of Tabibian's share of the Z-Burger profits, plus interest.

### COUNT VI – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (Against Defendants Esfahani and E. Esfahani)

88.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 87.

89.     Tabibian's contract with Esfahani and E. Esfahani contained an implied covenant that both Esfahani and E. Esfahani would deal with Tabibian in good faith and fairly.

90.     Esfahani and E. Esfahani engaged in conduct, separate and apart from their performance of obligations under the contract, without good faith and for the purpose of depriving Tabibian of his rights and benefits under the contract.

91.     As a direct and proximate result of Esfahani's and E. Esfahani's breach of the covenant of good faith and fair dealing, Tabibian has been damaged.

## COUNT VII – UNJUST ENRICHMENT/QUANTUM MERUIT
### (Against All Defendants)

92.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 91.

93.     As described above, Tabibian provided valuable services and benefits to Esfahani, E. Esfahani, and the LLC Defendants by establishing, operating, marketing, and promoting the various Z-Burger locations allegedly owned by the LLC Defendants, as well as allowing them to use his Asserted Trademarks and Copyrighted Works.

94.     Defendants had knowledge of the benefits provided to them by Tabibian, at least through the public nature of Tabibian's services, through his tireless efforts expended on behalf of Z-Burger, as shown above, and by the media attention and accolades described above, and accepted, used, and enjoyed the valuable services and benefits provided to them by Tabibian.

95.     As a result of Tabibian's efforts, the Z-Burger locations allegedly owned by the LLC Defendants have become successful and Esfahani, E. Esfahani, and the LLC Defendants have thus been enriched by Tabibian's efforts. Tabibian, through his communications with Esfahani, reasonably informed the Defendants that he expected to be compensated for his efforts by receiving an equal share of the Z-Burger profits.

96.     Tabibian has not been compensated, making Defendants' enrichment unjust.

97.     Under the circumstances, it would be inequitable for Defendants to retain the benefits of Tabibian's services without making payment to Tabibian and circumstances require that the Defendants make restitution to Tabibian by giving him his equal share of the Z-Burger profits.

23

98.     By reason of the actions alleged herein, Esfahani, E. Esfahani, and the LLC Defendants are liable to Tabibian for monetary damages equivalent to the compensation he would have earned under the Z-Burger Partnership agreement.

## COUNT VIII – FRAUDULENT MISREPRESENTATION
### (Against All Defendants)

99.     Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 98 above.

100.    Defendant Esfahani engaged in a pattern of fraudulent misrepresentation by (i) inducing Tabibian to provide his knowledge, expertise, and operational control for the Z-Burger Partnership by assuring him he was a part owner of the Z-Burger business and entitled to an equal share of the profits; and (ii) securing Tabibian's continued performance by, on numerous subsequent occasions, reassuring him of his partial ownership and entitlement to an equal share of the profits.

101.    The LLC Defendants also committed the fraudulent misrepresentation through the actions of Esfahani, their managing member.

102.    Tabibian relied on Esfahani's representations to provide his knowledge, experience, and operational control for the benefit of Esfahani, E. Esfahani, the Z-Burger Partnership, and/or the LLC Defendants.

103.    Esfahani—and the Z-Burger Partnership, E. Esfahani, and the LLC Defendants through Esfahani—made the representations complained of herein with the intent to fraudulently induce Tabibian to provide his knowledge, experience, and operational control for their benefit.

104.    Esfahani—and the Z-Burger Partnership, E. Esfahani, and the LLC Defendants through Esfahani—knew that Tabibian would reasonably rely on the express

and repeated representations as he did, set forth above.

105.    Esfahani—and the Z-Burger Partnership, E. Esfahani, and the LLC Defendants through Esfahani—knew that Esfahani's representations were false.

106.    The representations were malicious, as evidenced by Esfahani's creation of the LLC Defendants, his naming of himself as the managing member, and his failure to name Tabibian as a member, and his assertion of ownership of the Z-Burger locations through the LLC Defendants.

107.    As a proximate result of the fraudulent misrepresentations described above, Tabibian suffered the loss of full compensation for his efforts.

108.    By reason of the fraudulent misrepresentations alleged herein, all Defendants are liable to Tabibian for general and special compensatory damages and punitive damages.

## COUNT IX – BREACH OF FIDUCIARY DUTY
### (Against Defendant Esfahani)

109.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 108 above.

110.    As equal partners in the Z-Burger Partnership, Esfahani owed a fiduciary duty to Tabibian, including the duty of loyalty, the duty of good faith and fair dealing, and the duty of care.

111.    On behalf of the Z-Burger Partnership, Esfahani negotiated agreements, including leases and loan payments, with other entities owned by Esfahani, including the LLC Defendants.

112.    As part of his fiduciary duties to the Z-Burger partners, including Tabibian, Esfahani was obligated to negotiate those agreements for the benefit of the

partnership.

113.    The terms of those agreements, however, were unbalanced in favor of
Esfahani to the detriment of the Z-Burger Partnership.

114.    By negotiating such agreements to his own benefit and to the detriment of
the other Z-Burger partners, including Tabibian, Esfahani breached his fiduciary duties to
the Z-Burger Partnership, including Tabibian.

115.    As a proximate cause of that breach, Esfahani is liable to Tabibian for
monetary damages to restore Tabibian to the position he would be in had Esfahani
negotiated those agreements in accordance with his fiduciary duty, plus any interest.

## COUNT X – ACCOUNTING
### (On Behalf of Plaintiff)

116.    Plaintiff realleges and incorporates herein the allegations contained in
paragraphs 1-115 above.

117.    As fiduciaries, Defendants Esfahani and E. Esfahani must account to
Tabibian for all funds received in connection with the operation of each of the six Z-
Burger locations.

## COUNT XI – CONSTRUCTIVE TRUST

118.    Plaintiff realleges and incorporates herein the allegations contained in
paragraphs 1-117 above.

119.    Defendants Esfahani and E. Esfahani have been disloyal fiduciaries to
Plaintiff, and profited and were enriched by their disloyalty.

120.    As disloyal fiduciaries who profited as a result of their disloyalty,
Defendants are deemed to hold the funds and benefits they have received in connection
with the Z-Burger restaurants, and the interest and proceeds obtained on the use of the

funds they wrongfully received, in constructive trust for Tabibian's benefit.

## COUNT XII – CONVERSION
### (Against All Defendants)

121.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1-120 above.

122.    On information and belief, Defendants have received profits in excess of $6 Million from the operation of the six Z-Burger restaurants.

123.    Tabibain had a right to at least one third of those profits  received by Defendants but withheld from him.

124.    Tabibian has demanded that the Defendants pay him his share of the Z-Burger Partnership's profits owed.

125.    Defendants misappropriated and converted the profits that they owe Tabibian under the Z Burger Partnership agreement and have failed to pay Tabibian.

126.    Defendants' misappropriation and conversion of Tabibian's profits were knowing and intentional.

127.    As a direct and proximate result of Defendants' conversion of Tabibian's property, Tabibian has been damaged.

128.    Defendants' conduct was malicious and willful, wanton and/or in reckless disregard of Tabibian's rights, justifying an award of punitive damages.

## COUNT XIII– CIVIL CONSPIRACY
### (Against Defendants Esfahani and E. Esfahani)

129.    Plaintiff realleges and incorporates herein the allegations contained in paragraphs 1 through 128 above.

130.    Upon information and belief, Defendants Esfahani and E. Esfahani, along

with one or more additional parties, conspired to unlawfully deprive Tabibian of his share of the profits from the Z-Burger Partnership.

131.    Upon information and belief, Esfahani and E. Esfahani, along with one or more additional parties, unlawfully agreed (i) to withhold Tabibian's share of the profits from the Z-Burger Partnership, (ii) to form the LLC Defendants to allegedly own and operate the Z-Burger restaurants without Tabibian's consent or knowledge, (iii) to prepare and submit fraudulent documents, including state and federal tax returns, (iv) to prepare and submit fraudulent IRS quarterly employee tax withholding documents, (v) to prepare and file fraudulent sales tax reports with the District of Columbia, forging Tabibian's name on these documents, and (vi) to prepare and file fraudulent DC franchise tax reports, in order to hide their illegal withholding of Tabibian's share of the profits from the Z-Burger Partnership and/or the damages to which Tabibian is otherwise entitled.

132.    Upon information and belief, Esfahani and E. Esfahani, along with one or more additional parties, took overt acts in accordance with said unlawful agreements by withholding Tabibian's share of the profits from the Z-Burger Partnership and by forming the LLC Defendants and preparing and submitting fraudulent documents, including state and federal tax returns, fraudulent IRS quarterly employee tax withholding documents, and preparing and submitting fraudulent DC sales tax reports containing Tabibian's forged name, and fraudulent DC franchise tax reports, in furtherance of their goal to unlawfully withhold Tabibian's share of the profits from the Z-Burger Partnership and/or the damages to which Tabibian is otherwise entitled. Those unlawful acts were taken pursuant to and in furtherance of the common scheme to unlawfully deprive Tabibian of

28

his share of the Z-Burger profits.

133.    As a direct and proximate result of such agreement and actions, Tabibian
has suffered  actual injury by being deprived of his share of the profits from the Z-Burger
Partnership and/or the damages to which Tabibian is otherwise entitled.

## COUNT XIV – DETRIMENTAL RELIANCE
### (Against Defendant Esfahani)

134.    Plaintiff realleges and incorporates herein the allegations contained in
paragraphs 1 through 133.

135.    In exchange for Tabibian's services, Defendant Esfahani promised him
that all Z-Burger profits would be split equally, first between Tabibian and Esfahani, and
later among Tabibian, Esfahani, and E. Esfahani. Tabibian reasonably relied on that
promise to develop, operate, and promote Z-Burger for the benefit of himself, Esfahani,
and E. Esfahani. As a result of that reasonable reliance, Tabibian spent substantial
amounts of time working on Z-Burger, forsaking other opportunities to generate income.
Thus, although Tabibian's experience and record in the restaurant business would have
allowed him to locate a position with another company and earn far more than the salary
he received from Z-Burger, Tabibian continued to develop, operate, and promote Z-
Burger due to Esfahani's promise that he would receive an equal share of the profits.

136.    Tabibian's reasonable reliance on Esfahani's promise thus deprived him of
time, labor, and income to his detriment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.      Preliminary and permanent injunctions barring Defendants; along with
each officer, agent, servant, employee, shareholder, and attorney of a Defendant;

each person acting for, by, through, or under a Defendant; and each person in active concert or participation with a Defendant and having actual notice of this Order by personal service or otherwise from (a) using Tabibian's trademarks as depicted in Exhibits A through E; (b) using any trademark that imitates or is confusingly similar to or in any way similar to Tabibian's trademarks, or that is likely to cause confusion, mistake, deception, or public misunderstanding as to the origin of Defendants' products and their connection to Tabibian;

B.    The Defendants be required to file with the Court and serve on Tabibian within thirty (30) days after entry of the injunction, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

C.    That, pursuant to 15 U.S.C. § 1117, Defendants be held liable for all damages suffered by Tabibian resulting from the acts alleged herein;

D.    That, pursuant to 15 U.S.C. § 1117, Defendants be compelled to account to Tabibian for any and all profits derived by it from its illegal acts complained of herein, including their willful infringement of the Asserted Marks;

E.    That the Defendants be ordered pursuant to 15 U.S.C. § 1118 to deliver up for destruction all containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in their possession, custody or control of Defendants bearing a mark found to infringe on Tabibian's trademark rights, as well as all means of making the same;

F.    That, pursuant to 17 U.S.C. § 504(b), Defendants be held liable for all damages as well as a disgorgement of Defendants' ill-gotten profits attributable to their

infringement of the Copyrighted Works, or, alternatively, the maximum statutory damages of $150,000.00 for all individual infringement involved in the action with respect to any one work for which any one infringer is individually liable, or for which any two or more infringers are jointly and severally liable, or for such other amount as may be proper under 17 U.S.C. § 504(b), as well as interest, costs, and reasonable attorneys' fees as provided by law;

      G.     Preliminary and permanent injunctions prohibiting further infringement of his copyrights and exclusive rights under the statute, pursuant to 17 U.S.C. § 504(b);

      H.     That Defendants be held liable for compensatory damages, and disgorgement of profits and advantages wrongfully gained by Defendants from infringing Tabibian's copyrights in an amount to be determined at trial, as well as interest, costs, and reasonable attorneys' fees as provided by law;

      I.     That Tabibian is entitled to a full and accurate accounting by Defendants of all profits generated through their infringement of the Copyrighted Works;

      J.     That Tabibian be awarded damages for Esfahani's and E. Esfahani's breach of contract.

      K.     That Tabibian be awarded all damages caused by Esfahani's and E. Esfahani's breaches of the implied covenant of good faith and fair dealing in their contract with Tabibian.

      L.     That Tabibian be awarded damages for their unjust enrichment.

      M.     That Tabibian be awarded general and special compensatory damages and punitive damages for Defendant Esfahani's fraudulent misrepresentation.

      N.     That Tabibian be awarded damages for Esfahani's and E. Esfahani's

breaches of their fiduciary duties.

O.      That Tabibian be awarded all damages caused by Defendants' conversion.

P.      That Tabibian receive an accounting from Defendants of all funds received in connection with the six Z-Burger locations, and that Defendants be ordered to produce independent, audited, and verified financial records for each of the Z-Burger restaurant locations so that an accurate accounting of profits may be made;

Q.      That a constructive trust be imposed on all funds received and retained by Defendants in connection with the six Z-Burger locations, and on any and all proceeds obtained as a result of the use of those funds.

R.      For special and other monetary damages to the extent permitted by law;

S.      For any other relief that the Court deems just and proper.


Dated: October 14, 2014                   Respectfully submitted,

                                          By: _____
                                          Thomas G. Southard (Bar No. 16861)
                                          tsouthard@ratnerprestia.com
                                          Brian S. Seal (*pro hac vice pending*)
                                          bseal@ratnerprestia.com
                                          RATNERPRESTIA
                                          1250 Eye Street, NW
                                          Suite 1000
                                          Washington, DC 20005
                                          Telephone: (202) 808-7361
                                          Facsimile: (615) 894-6430

                                          *Attorneys for Plaintiff*
                                          PAYAM TABIBIAN

## VERIFICATION OF COMPLAINT

I, Payam Tabibian, declare that:

     1.    I am the named plaintiff in this civil action and am over the age of eighteen.

     2.    I have read the foregoing Verified Complaint and I know the contents thereof. I am informed and believe and on that ground allege that the matters stated in the Verified Complaint are true and correct.

     3.    The matters stated in the Verified Complaint are true of my own knowledge, except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true and correct.

     4.    I declare under penalty of perjury that the foregoing is true and correct.

Executed at Washington, D.C. on October 14, 2014

Payam Tabibian

33